STATE, DAVID A. LANTZ, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE BOROUGH OF HIGHTS-TOWN.

1. A writ of error directed to the Supreme Court to review a judgment of that court dismissing a writ of *certiorari* bringing up certain proceedings taken toward the revocation of a license by the common council of Hightstown, does not, *ipso facto*, stay that body from proceeding with the investigation, after the dismissal of the writ, from the point at which they were stayed by its allowance.

2. The common council of Hightstown cannot revoke a license after the expiration of the session at which it was granted (except for fraud practiced upon the licensing body in obtaining it,) for any cause other than those mentioned in the act concerning inns and taverns.

———

This *certiorari* brings up certain proceedings taken by the common council of the borough of Hightstown to vacate a license previously granted by that body to the prosecutor to keep an inn and tavern in that borough.

Argued at November Term, 1883, before Justices REED and PARKER.

For the prosecutor, *R. M. J. Smith* and *W. Y. Johnson.*

For the defendant, *A. S. Appleget.*

The opinion of the court was delivered by

REED, J.   From the record before us it appears that an application was made by David A. Lantz for a license to keep an inn within the limits of Hightstown, which license was by the common council granted.

Afterwards, by direction of the common council, notices were served upon Mr. Lantz that that body would proceed to investigate and determine whether the said license should not be revoked for non-compliance with sections 2, 11, 13 and 42 of the act to further regulate licensing of inns and taverns and places for the sale of malt, vinous and spirituous and other· intoxicating liquors or drinks, approved March 23d, 1883, as well as the charter of the borough and the several supplements relating to the same, and for false and fraudulent statements of facts relative to the freehold qualifications and places of residence of the several persons recommending his application for license.

Either at this point of time or after some progress in the investigation, which does not appear in this record, a writ of *certiorari* was procured, by which the proceedings, so far as they had progressed, were brought into this court.   At the hearing at June Term last, this writ was dismissed as having been improvidently allowed.   From this judgment of the Supreme Court a writ of error was taken to the Court of Errors and Appeals.

The common council, after the dismissal of the writ of *certiorari,* gave notice to Mr. Lantz that they would proceed with the investigation, which had been stayed by the writ of *certiorari.*   They did proceed, and the result of such investigation was a determination that the said license was void, the

same having been procured by fraud and misrepresentation and by deceiving the corporate authorities for the purpose of obtaining said license. Another writ of *certiorari* was allowed, bringing up these additional proceedings.

The first reason urged upon the argument of the present cause against the validity of these proceedings is that the taking of the writ of error from the judgment of dismissal rendered by the Supreme Court operated as a *supersedeas*, and that all subsequent proceedings taken by the common council were without legal countenance.

In considering the effect of the taking of the writ of error, it is obvious that upon the entry of the judgment of the Supreme Court dismissing the writ of *certiorari* the court below could proceed in the investigation from the step at which it had been arrested by the service of the writ. When the writ of error was procured and served upon the Supreme Court the action of that court was already finished.

The writ of error might have been a *supersedeas* of any further action of that court if it had any further judicial act to perform in relation to it. In case of affirmance of some proceeding in an inferior tribunal where the record is retained in this court for the purpose of execution or other act which the Supreme Court could exert in concluding the suit, a writ of error from the judgment of affirmance would, at common law, operate as a stay. But I am unable to perceive in what way the service of such a writ upon the Supreme Court in a proceeding like the present, where the cause has been dismissed from that court and the inferior tribunal has possession of the suit, can be said to operate as a stay of the further action of the latter tribunal. Even if it could have so operated, there is nothing to show that the common council had any notice of the issuance of such writ.

We think that the existence of the writ of error and its service upon the Supreme Court did not deprive the common council of jurisdiction to continue the investigation.

I may remark that although no rule seems to be entered, it is a matter within the cognizance of the court that when

the original *certiorari* was before this court for argument it appeared that the present prosecutor was one of three prosecutors named in one writ, each having a distinct interest. This difficulty being then suggested, he and Donnell were struck, by consent of the counsel of prosecutor, from the writ, so that when the judgment of dismissal was entered there was only a cause existing in which one Weldy was prosecutor.

The remaining reasons are aimed at the power of the common council to revoke even if their action was not restrained by the above writ.

It is contended that the license had been regularly granted by a previous common council, and that this common council in the borough of Hightstown had still the power to grant licenses, notwithstanding the act of 1883, (*Pamph. L., p.* 221,) which provided that in boroughs of the third class (and the borough of Hightstown is within the third class) all licenses to keep inns shall be granted by the Court of Common Pleas.

A full and interesting argument was addressed to the court, attacking the constitutionality of this act, but inasmuch as the license itself is not the point of attack upon this *certiorari,* nor is it urged that the common council had no power in any event to grant the license, the legality of the act of 1883 is in this case immaterial.

All persons concerned in the cause, so far as appears from their position when before the common council, assumed that such power was lodged in the common council. The ground upon which the license was attacked and revoked is that it was obtained by fraudulent misrepresentation of facts to the body which granted it and failure to comply with statutory directions in making the application. That the first is a legal ground upon which such revocation can be placed is settled in this court by the decision made at the time of dismissing the former writ.

The evidence taken before the common council sent up is meagre and is stated to be not reported in full, but is clearly substantially all that was material. From it there is testi-

mony to show that two of those who signed the application for license as freeholders received deeds late in the day of May 31st, and that the name of another signer was upon some other petition. Upon this testimony the determination that this license had been obtained by fraud was rested. Now the fraud for which the previous determination of the common council could be impeached was a fraud practiced upon the body which granted the license. There seems to be nothing to show that Mr. Lantz made any fraudulent representation to the common council. His affidavit attached to the petition was that the paper was signed by ten reputable freeholders of the township of East Windsor and the borough of Hightstown. There were thirteen signatures to the petition, and therefore, if it was true that two owned no real estate, there is nothing to show that others were not freeholders and that the affidavit was not true.

If another signer had already signed a petition for another license, there were ten names still upon the petition. So, conceding all that was claimed upon the argument as the force of the testimony sent up, it shows no intentional misrepresentation, still less any fraudulent misrepresentation, by Mr. Lantz. By the thirty-second section of the act concerning inns and taverns (*Rev.*, *p.* 491,) only ten signatures were necessary as a foundation for the action of the common council.

But it does not appear that Reed and Pullen were not freeholders. There is no evidence to show that they owned no real estate till they received the deeds from Norton on the evening of May 31st. Nor is there any evidence to show that Charles H. Harris had signed the petition of Perrine before he placed his signature upon the present application. But had all this been proven, it does not appear that the common council were misled by the presence of those signatures. There was an application with the ten signatures, and upon the faith of such a conformity with the requirement of the law the license was obviously granted. Not only is the weight of evidence against the finding of fraud, but there is

an entire want of evidence to establish it. I think upon this ground the revocation cannot be sustained.

It is said again that the application did not conform to the requirements of the act of 1883. *Pamph. L., p.* 194. It is a question discussed in this case whether this act applies to petitions for license in the borough of Hightstown. It is a question which arises from the face of the papers, and in regard to which the former council must be supposed to have acted, and it is a question admitting of diverse views.

Now I am of opinion that when a license is granted at a session of a body constituted like the common council, and there is no reconsideration of that action during the session, there can be no review of that action at a subsequent meeting, on the ground that the body which granted the license erred upon some question of law or fact, unless the power of revocation is conferred by legislation.

I am aware that a license is in no sense a contract and confers upon the licensee no right which is protected by the organic law.

The legislature can pass laws which abrogate the privilege so granted or abridges the term for which it is granted. *Burroughs on Taxation,* § 78; *Cooley on Taxation* 408.

Nevertheless, the license is a privilege for which either a fee or a tax is paid, not in the way of consideration, possibly, but as a condition precedent to the issuance of the evidence of the granting of such license. When this act is done and the license is granted to carry on a trade or occupation for a period of time within the power of the appointing body to name, it should not be subjected to the fluctuation of sentiment caused by changing membership in the licensing body, or shifting views upon the questions which have been, or should have been, examined and passed upon. In regard to the exercise of the power over the subject of licensing inns, the statute contains express mention of the grounds upon which the Court of Common Pleas shall proceed to revoke the license before the expiration of the term for which it is granted. *Rev., p.* 489, § 24. This section contains a wide

scope for judicial action, and the prescription of the causes which shall be the ground for revocation is an implied admission of the absence of the power to revoke without legislative sanction. I know of no case where this power has been asserted in a case not coming within those mentioned in the act. I can find no instance in the practice of boards of excise or other licensing bodies in which the power of revocation has been exerted except under the provisions of a statute.

Mr. Cooley remarks that under some statutes licenses are permitted to be recalled or revoked for the misbehavior of those who hold them, and that this, in some cases, is a very salutary power.

The inference arising from the existing statutory power is the necessity for its existence, and the force of the remark of the learned writer is that it is salutary because it effects a good purpose, which, without this legislative assistance, would be unreachable.

I concede to the common council the same power of revocation that exists elsewhere in the Court of Common Pleas, and if the ground upon which the action now under review was placed could be brought within any of the causes mentioned in the act concerning inns and taverns, the revocation would stand. But the ground upon which the action of the revoking body is placed is merely that the licensing body made a mistake in point of law as to the form of the application. This is not one of the statutory causes for revocation, and it affords no support for the action of the board. If the application was so defective as to strike at the jurisdiction of the board in acting upon it, the proper course was to attack the license by bringing it into this court for review.

The action of the common council in revoking the license is vacated, with costs.